NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-420

COMMONWEALTH

vs.

IZAIAH CARAVAJAL-MORALES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury-waived trial, a Boston Municipal Court judge (trial judge) found the defendant guilty of possession of ammunition without a firearm identification (FID) card in violation of G. L. c. 269, § 10 (h) (1).[1]  The defendant's motion to suppress was denied by a different judge (motion judge) prior to trial.  On appeal, the defendant challenges the denial of his motion to suppress and the sufficiency of the evidence to support his conviction.  We affirm.

---

[1] The defendant was also charged with possession of a large capacity firearm in violation of G. L. c. 269, § 10 (m), which charge was dismissed by agreement of the Commonwealth prior to trial.

Background.  We summarize the facts found by the motion judge and the trial judge, supplemented by undisputed evidence from the record, because the evidence at the suppression hearing and the trial was largely the same.  Commonwealth v. Tremblay, 480 Mass. 645, 654-655 (2018).  On February 28, 2023, police received a call from Dan Linskey, a security consultant for Seed Cannabis Dispensary, a marijuana dispensary.  Linskey reported that a dispensary employee had brought a firearm to work and that "the manager on site had confiscated the weapon and it was being held in a locked room at the dispensary."

When police arrived at the dispensary, the manager, Kristen Picard, met them outside.  She explained that earlier in the day, an employee told her that the defendant had been living in the employee's home, and that the defendant had told the employee sometime in the past two weeks that he was in possession of a firearm.  The employee urged him to leave it at her home or store it in his vehicle, but he refused to follow her advice.  The employee believed that the defendant had brought the firearm to the workplace and that it was stored in his employee locker.  Picard told police that it was against company policy to bring a firearm to the business.  Picard "had searched the locker area and recovered a firearm in a backpack that she believed belonged to the defendant."  Once she found the firearm, she "alerted her superiors," who notified the

2

owners of the business.  The owners then instructed Linskey to call 911.

Four Boston police officers responded to the dispensary. One officer accompanied Picard to the employee locker room area. The officer and Picard went to a "back storage area" next to the employee locker area, where Picard gave a backpack to the officer and explained that "it contained a firearm in two pieces."  She told the officer that the backpack was hanging on a wall in the employee locker area and that she had first searched the lockers in an effort to find the firearm.  The officer "took possession of the backpack, opened it and observed a firearm."

Three other officers entered the front door of the dispensary and found the defendant standing behind a display case.  The three officers approached the defendant and advised him of his Miranda rights.  He told them that he did not possess a firearm license and denied bringing any illegal items to work. The police escorted the defendant to the employee locker room area where they showed him the open backpack, and "he admitted ownership of the backpack and the firearm."  The police then arrested him for "unlawful[ly] carrying a loaded firearm and ammunition."

Discussion. 1. Motion to suppress.  The defendant contends that the motion judge erred in denying the motion to

3

suppress as the warrantless search of the defendant's backpack was not justified by an exception to the warrant requirement. We disagree.  "In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error . . . .  We review independently the application of constitutional principles to the facts found" (citation omitted).  Commonwealth v. Cordero, 477 Mass. 237, 241 (2017).

"Both art. 14 of the Massachusetts Declaration of Rights and the Fourth Amendment to the United States Constitution apply only to State action.  Evidence discovered and seized by private parties is admissible without regard to the methods used, unless State officials have instigated or participated in the search." (citations and footnote omitted).  Commonwealth v. Gumkowski, 487 Mass. 314, 321 (2021).  Here, the motion judge found, and the defendant does not dispute, that "the police did not instigate or conduct an independent search of the lockers or backpack"; rather, Picard "confiscated the backpack, discovered the firearm and placed it in a secure area."  Because Picard looked in the backpack and found the gun prior to the police arriving and opening the bag, the motion judge properly found that the police "were not involved in the initial search and recovery of the firearm" and concluded that the manager "did not act as an agent or arm of the police."  See United States v.

4

Jacobsen, 466 U.S. 109, 119 (1984) (where private party previously opened package, found contraband, and notified law enforcement, government agent's subsequent viewing of what "private party had freely made available for his inspection did not violate the Fourth Amendment").  Accordingly, we conclude that the motion judge did not err in denying the motion to suppress.

2.  Sufficiency of evidence.  We find unavailing the defendant's argument that the evidence was insufficient to convict him of possession of ammunition without an FID card because Officer Ryan Tilley could not remember the arrest and did not identify the defendant at trial.  When reviewing a challenge to the sufficiency of the evidence, we consider whether, after viewing the evidence in the light most favorable to the Commonwealth, any rational trier of fact could find that each of the essential elements of the crime has been proved beyond a reasonable doubt.  Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979).

To secure a conviction for unlicensed possession of ammunition, the Commonwealth must have proved that the defendant:  (1) possessed; (2) ammunition designed for use in any firearm; (3) without complying with the FID card requirements of G. L. c. 140, § 129B, as amended by St. 2018, c. 123, §§ 9, 10.  See Commonwealth v. McCollum, 79 Mass. App. Ct.

5

239, 245 (2011).  Where the defendant did not have actual possession of the ammunition, the Commonwealth may prove constructive possession.  See id. at 246 ("Constructive possession requires that the defendant know of the presence of the contraband and have the ability and intention to exercise dominion and control over it").

Although Officer Tilley could not remember the defendant's name, had difficulty recalling the arrest, and did not identify him at trial, Officer Renee Cooper identified the defendant at trial as the person working at the dispensary who admitted that the backpack and firearm belonged to him.  The trial judge also heard evidence that Picard found the backpack in the employee break room that is only accessible to employees.  The evidence was sufficient to permit the judge to find that the defendant knew that the ammunition was inside the backpack, which he had admitted belonged to him.  See McCollum, 79 Mass. App. Ct. at 246 (sufficient evidence that defendant constructively possessed ammunition where his statement that weapon was in closet established that he knew location of firearm and ammunition and had ability to exercise control over them).

At trial, a Boston police detective identified a magazine that was taken from the backpack and testified that there were bullets inside the magazine.  A firearms analysis expert testified at trial that she examined the bullets and magazine

6

and identified them as ammunition, explaining that they had three out of the four indicators of ammunition.  See Commonwealth v. Mendes, 44 Mass. App. Ct. 903, 904 (1997), quoting G. L. c. 140, § 121 (physical appearance, manner of packaging, and police testimony permitted jury to infer that ammunition was "designed for use in [a] firearm").

A Department of Criminal Justice Information Services employee testified that an LTC (license to carry) is required to possess, own, or carry any firearm within the Commonwealth.  A bureau manager for the Department of Criminal Justice Information Services also testified that he searched the State database and found no records showing that the defendant had an LTC or FID card.[2]

Accordingly, we conclude that viewing the evidence in the light most favorable to the Commonwealth, the evidence was sufficient to permit the judge to find the defendant guilty of unlicensed possession of ammunition.

Judgment affirmed.

By the Court (Desmond, Tan & Wood, JJ.[3]),

Paul Little

---

[2] An FID card allows a person to own or possess a rifle or shotgun but does not allow them to carry a firearm outside of the house.

[3] The panelists are listed in order of seniority.

7

                              Clerk


Entered:  July 6, 2026.